Clay WEST

v.

**BRAZOS RIVER HARBOR
NAVIGATION DISTRICT,
et al.**

Civ. A. No. G–92–86.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 3, 1993.

Mark W. Stevens, Galveston, TX, R. Mike Borland, Borland & Borland, Midland, TX, for plaintiff.

Joseph Patterson, Leland B. Kee, Kee, Patterson & Neal, Angleton, TX, Robert Michael Moore, Fulbright & Jaworski, Houston, TX, for defendants.

Robert L. LeBoeuf, LeBoeuf & Wittenmyer, Angleton, TX, for Everet Kennemer, Kennemer, Vandaveer & Master, A Professional Corporation or Partnership.

Kathy D. Patrick, Gibbs & Ratliff, Houston, TX, for Fred P. Schumm, Merrill Lynch, Pierce, Fenner & Smith Inc., A Corp.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Before the Court are three motions for summary judgment filed by all the defendants in this action. In a previous order issued on April 20, 1993, this Court dismissed several claims against various defendants. The motions presently before the Court seek to eliminate the remaining claims.

For the reasons stated below, Defendants Brazos River Harbor Navigation District's, John W. Damon's, F.J. Richers's, Tobey L. Davenport's, Thomas S. Perryman's, B.P. Haynes', B.L. Tanner's, A.J. Reixach's, and Ben Backor's motion is GRANTED. Defendants Everet Kennemer's and Kennemer, Vandaveer, & Master's motion is GRANTED. And, Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc.'s and Fred Schumm's motion is GRANTED.[1]

---

1. Before the Court reaches the merits of the motions before it, it will monetarily diverge from its normal pronouncements to admonish Plaintiff's attorney for his lack of respect for this Court as evidenced by the repeated attempts to reassert claims against this Court's orders and also evidenced by the poor quality of Plaintiff's response to Defendants' motions for summary judgment.

First, the Court admonishes Plaintiff for his repeated requests for reconsideration of various claims which this Court specifically dismissed with prejudice in its Order of April 20, 1993. In that Order, this Court stated, "The Court will not entertain any motion from the Plaintiff to resurrect any claim dismissed in this Order." The Court would excuse such actions if Plaintiff's

This case arises out of the alleged wrongful termination of Plaintiff's employment as the Director of Finance and Administration for Defendant Brazos River Harbor Navigation District ("District"). According to Plaintiff, he was terminated in retaliation for his cancellation of the authority which Defendants Fred. P. Schumm and Merrill Lynch, Pierce, Fenner & Smith, Inc., possessed to invest certain District funds. Subsequent to the dismissal, Plaintiff filed suit under 42 U.S.C. § 1983 alleging that this termination and its surrounding circumstances violated several of his constitutional rights and several state laws.

In its Order of April 20, 1993, this Court dismissed several federal- and state-law claims asserted against Defendants. Plaintiff's remaining federal claim involves Plaintiff's constitutionally protected freedom of speech. Plaintiff's remaining state-law claims involve slander, tortious interference with contract, conspiracy, and violations of the Texas Open Meetings Act and the Texas Whistle Blower Act.[2]

## SUMMARY JUDGMENT

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is an authentic issue

for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact finder could decide in favor of the nonmoving party. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In ruling on a motion for summary judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in its favor. Credibility determinations, the weighing of evidence, and the drawing of reasonable inferences are all left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

■ Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .

requests would have been, at the least, based upon recent changes in the law or newly discovered facts. But here, Plaintiff's requests border Rule 11 sanctions because many of his arguments consist of half-baked, hair-brained theories that are factually baseless even though discovery was, at the least, substantially completed.

Second, in Plaintiff's response, the Court found many of Plaintiff's arguments illogical, insupportable, nonsensical, and some even extremely outlandish. Others were only understandable after lengthy analysis which initially convinced this Court that Plaintiff's counsel was severely inept. Only after comparing Plaintiff's response to his amended complaint did the Court realize that Plaintiff's counsel was capable of coherently asserting legal claims and arguing relevant facts and that the ineptness shown in the response was merely blatant disrespect of this Court's valuable

time and important duties to Plaintiff as well as all others who appear before this Court. This Court should not be required to spend its time analyzing illogical and nonsensical arguments but instead analyzing the law and applying it to relevant facts presented in clear and concise legal arguments. Plaintiff's only reprieve from his counsel's disrespect is due to the Court's duty to ensure that it carries out justice. The Court admonishes Plaintiff's counsel to carefully consider the pleadings it files in this Court in the future under penalty of having them stricken with sanctions levied personally against Plaintiff's counsel.

2. Plaintiff has voluntarily abandoned his intentional infliction of emotional distress claim against all Defendants.

[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)).

## DEFENDANTS BRAZOS RIVER HARBOR NAVIGATION DISTRICT, JOHN W. DAMON, F.J. RICHERS, TOBEY L. DAVENPORT, THOMAS S. PERRYMAN, B.P. HAYNES, B.L. TANNER, A.J. REIXACH, AND BEN BACKOR

The remaining claims against the District and individual board members are for violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983, slander, violation of the Texas Whistle Blower Act, violation of the Texas Open Meetings Act, and conspiracy.

Many of the claims before the Court depend from Plaintiff's assertion that he was fired because he revoked the authority of Defendant Schumm, a non-District employee, to transfer funds between brokerage firms. Plaintiff is the District's Director of Finance and Administration and admits that, with approval of the District's legal counsel, he granted Schumm the written authority to make such transfers. But, Plaintiff claims that he told Schumm to notify him before any transfer occurred. This notification would allow Plaintiff to fulfill his responsibilities to Defendant Reixach, the District's chief executive officer, and duties to know where District money was deposited. Plaintiff never states that the notification agreement was necessary for the legality of the authority granted to Schumm nor that the notification agreement was considered by counsel in determining the legality of the authority granted Schumm.

Soon after Schumm received the authority from Plaintiff, Schumm's ex-brokerage firm notified Plaintiff that Schumm was about to transfer $185,000 to Schumm's new firm, Defendant Merrill Lynch. Plaintiff immediately terminated Schumm's authority to transfer the funds and notified the District's outside auditor, Phyllis Saathoff, of his actions. Plaintiff contends that, at this time, he suddenly believed that the authority granted Schumm might violate Article 22.1 of the Policies and Procedures of the Board of Navigation and Canal Commissioners of Brazos River Harbor Navigation District. It is this revocation that Plaintiff claims he was terminated for in violation of the First Amendment.

■ It is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988). But, to obtain relief from a district court under 42 U.S.C. § 1983, a public employee must demonstrate that:

1. the speech addressed a matter of public concern;

2. the employee's interest in communicating upon matters of public concern outweighs the defendant's interest promoting the efficiency of the public service they perform; and

3. the employee's discipline was motivated by the uttered speech.

*Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir.1990).

■ Whether speech addresses a matter of public concern depends upon "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Meyers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "The courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'" *Page v. DeLaune,* 837 F.2d 233, 237 (5th Cir.1988) (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690). Because the courts have not precisely defined "public concern," the inquiry into the "content, form and context" of a given statement is made on a case-by-case basis. *Kinsey v. Salado Independent School Dist.,* 916 F.2d 273, 277 (5th Cir.1990), *superseded,* 950

F.2d 988 (5th Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 2275, 119 L.Ed.2d 201 (1992).[3]

■ The speech that Plaintiff claims that he was fired for and that is protected by the First Amendment is his revoking the authority of Schumm to transfer funds. Plaintiff attempts to characterize his speech as the act of a public employee reporting upon illegalities in the government. But, the Court finds this characterization inherently flawed.

Plaintiff is the one who initially gave Schumm the broad authority which Plaintiff later objected to. Plaintiff even consulted with the District's counsel before granting the authority. Thus, Plaintiff's speech in objecting to Schumm's authority merely criticizes actions of Plaintiff himself. If the attempted transfer made pursuant to the broad authority given Schumm would have actually violated state law, Plaintiff would be the responsible employee because he gave Schumm the written authority to make the purported illegal transfer. Clearly, Plaintiff's speech was not a matter of public concern.

The Court might hold otherwise if Plaintiff had asserted that Schumm was knowingly violating state law or that Schumm duped Plaintiff into granting the broad authority or even if Plaintiff was somehow coerced into granting the authority. But here, where Plaintiff's actions evidence Plaintiff's second guessing his own prior decision, made with the approval of District counsel, the Court finds that Plaintiff's speech is merely a matter of private concern.

"If the speech in question does not address a matter of public concern, the inquiry ends." *Knowlton v. Greenwood Indep. Sch. Dist.,* 957 F.2d 1172, 1177 (5th Cir.1992). For these reasons, the stated Defendants' motion for summary judgment on the 42 U.S.C. § 1983 claim is GRANTED.

Plaintiff's second remaining claim against these Defendants is for slander. Plaintiff contends slander occurred when Defendant Reixach told Defendant Richers, the District's chairman of the board, that Phyllis Saathoff, who was an outside auditor of the District, smelled alcohol on Plaintiff's breath at work.

■ A qualified privilege attaches to "accusations or comments about an employee by [his] employer, made to a person having an interest or duty in the matter to which the communication relates...." *Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 449 (Tex. App.—Houston [1st Dist.] 1993, n.w.h.); *see Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814, 815 (Tex.Civ.App.—Tyler 1980, no writ). Whether a qualified privilege exists is a question of law. *Schauer,* 856 S.W.2d at 449; *Bergman,* 594 S.W.2d at 816.

■ The Court holds that the communication between Richers and Reixach was qualifiedly privileged. Reixach was the District's chief executive officer, and Richers was the District's chairman of the board. Clearly, Reixach and Richers both had an interest in whether Plaintiff was drinking on the job.

■ A privileged communication loses its privilege if it was made without good faith or with actual malice. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Actual malice is evidenced by knowledge of the falsity of the statement or reckless disregard for its falsity. *Id.*

■ When a statement is privileged, the law presumes good faith and a lack of actual malice. *Schauer,* 856 S.W.2d at 449. To prevail, a plaintiff must establish clear and convincing proof that the statement was made with malice. *Id.* at 450. The plaintiff must demonstrate "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* "A plaintiff cannot recover when the record is devoid of any evidence or support for a reasonable inference of actual malice." *Id.* at 449–450. "Mere surmise or suspicion of malice does not carry the probative force necessary to form the basis of a legal inference of malice." *Id.*

---

**3.** *Kinsey* lists several factors to consider in determining which speech concerns the public: (1) whether the communication related to the policies of the institution, (2) whether the communication was in-house, (3) whether the employee tried to communicate to the public, and (4) whether people outside the workplace were debating the subject of the speech. *Kinsey,* 916 F.2d at 278.

■ Plaintiff argues that bad faith or actual malice is evidenced by two facts: (1) that Reixach did not report Plaintiff's alcohol breath pursuant to the District's drug and alcohol policy and (2) that Reixach did not mention it to Plaintiff personally. These facts only arouse mere suspicion of malice and are not sufficient evidence to demonstrate that Reixach entertained serious doubts about the truth of the statement. The Court concludes that these two facts, when considered in light of the entire record, do not raise a genuine issue of material fact regarding Reixach's bad faith or malice.[4]

■ Plaintiff's third remaining claim is under the Texas Whistle Blower Act, Tex. Rev.Civ.Stat.Ann. art. 6252–16a (Vernon Supp.1993). Plaintiff claims that his report of his revocation of Schumm's alleged unlawful authority to Phyllis Saathoff, who was performing a legally mandated audit of the District, constitutes an act protected under the Whistle Blower Act.

The Whistle Blower Act states that a governmental body may not terminate an employee "who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith." Tex. Rev.Civ.Stat.Ann. art. 6252–16a, § 2 (Vernon Supp.1993). The Court finds that Plaintiff cannot claim protection under this act for two reasons.

First, Plaintiff did not report the violation of a law, or if he did, it was the potential violation for which he would have been partially responsible. Plaintiff never contends that Schumm attempted to violate the law by transferring the funds. Plaintiff merely contends that the authority granted to Schumm possibly violated law. Although the Court fails to understand how this grant of authority could, in itself, violate Article 22.1, the only law cited by Plaintiff, if an unlawful act would have been committed pursuant to Schumm's authority, Plaintiff would have been at least partially to blame because he granted the overbroad authority.

Second, a claimant under the act must prove that he reported the violation to "an appropriate law enforcement authority." *Knowlton,* 957 F.2d at 1181. Plaintiff has failed to produce any facts which support this element of his claim. In his summary judgment response, Plaintiff states that Saathoff was an appropriate authority because she was acting as the District auditor who "ensure[d] compliance with [f]ederal law under the 'Single Audit Act.'" Although an auditor's function is to ensure that an entity has complied with federal law, Plaintiff has failed to show that the auditor was an "appropriate" law "enforcement" authority, specifically, that she had the power and duty under the law to revoke Schumm's authority or prevent the violation of state law or district rules. *See City of Dallas v. Moreau,* 697 S.W.2d 472, 474 (Tex.App.—Dallas 1985, no writ).

Plaintiff erroneously cites Tex.Water Code Ann. § 63.224 (Vernon 1988) to support his contention that an auditor would be the appropriate enforcement authority. Section 63.224 merely requires districts to conduct yearly audits. The Court surmises that the appropriate enforcement authority for violation of District rules in these circumstances would have been Plaintiff himself or Defendant Reixach, but it clearly was not Saathoff. For these reasons, Defendants' motion for summary judgment on the claim under the Texas Whistle Blower Act is GRANTED.

Plaintiff's fourth remaining claim against Defendants is a claim under the Texas Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1993). Before Plaintiff was terminated, Reixach contacted each District commissioner. Plaintiff contends that Reixach told him that these contacts where made to solicit approval for Plaintiff's termination. Defendant contends that these contacts were made to merely inform the commissioners of Reixach's prior decision to terminate Plaintiff.

■ The Texas Open Meetings Act is not violated when members confer ex parte and

---

4. In Plaintiff's amended complaint, he alleges that several other statements made by other individuals regarding his job performance and alcohol breath were slanderous. However, for the reasons listed above, the Court holds that these statements were privileged and that Plaintiff has failed to raise a genuine issue of material fact regarding the malice behind those statements.

one on one. *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990). Thus, Reixach's one-on-one discussions with the board members, regardless of the purpose, is not a per se violation of the Open Meetings Act.

Plaintiff contends that Defendants violated section 4(b) of the Texas Open Meetings Act by knowingly conspiring to circumvent the provisions of this act. But, Plaintiff has produced no evidence to show that Defendants knowingly conspired to circumvent the act. Moreover, the evidence produced by Plaintiff shows exactly the opposite. Consequently, Defendants' motion for summary judgment on Plaintiff's claims for violation of the Texas Open Meetings Act is GRANTED. Plaintiff's last remaining claim for conspiracy against these Defendant is discussed below.

## DEFENDANTS KENNEMER AND KENNEMER, VANDAVEER & MASTER

The only remaining claim against Defendants Kennemer and Kennemer, Vandaveer & Master is an action for slander. Plaintiff alleges that the offending publications are (1) Kennemer's suggestions, other than in the February 25 termination meeting, that Plaintiff was unsuited to his job and (2) Phyllis Saathoff's allegations that Plaintiff had alcohol on his breath during working hours. Saathoff was an employee of Kennemer, Vandaveer & Master.[5]

◼ Slander is a defamatory statement orally published to a third party without justification or excuse. *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex.App.—Corpus Christi 1989, no writ). Statements made concerning a public official are constitutionally privileged if they are not made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). Actual malice is shown by demonstrating that the statement was made knowing that it was false or with reckless disregard for its falsity. *Id.* at 279–80. Whether a qualified privilege exists is a question of law. *Bergman*, 594 S.W.2d at 816. As Director of Finance and Administration

for the District, Plaintiff was a public official. *See Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 676, 15 L.Ed.2d 597 (1966). Thus, any statements regarding his job performance were qualified.

Moreover, a privilege attaches to statements "made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform, to another person having a corresponding interest or duty." *Bergman*, 594 S.W.2d at 815. This privilege is a question of law for the court and can be lost if the statement was made in bad faith or with actual malice. *Bergman*, 594 S.W.2d at 815.

◼ According to Plaintiff, Saathoff knew that the District had a drug and alcohol policy which prohibited a District employee from being under the influence of alcohol while at work. Moreover, Saathoff states that if someone in Plaintiff's position was drinking alcohol during work, it would be her responsibility as auditor to report this behavior to the appropriate individuals. Thus, when Saathoff smelled alcohol on Plaintiff's breath, she reported it to her supervisor, Defendant Kennemer, and Reixach. The Court concludes that Saathoff had a sufficient common interest with Kennemer and Reixach regarding Plaintiff's job performance that her communication was cloaked with a qualified privilege.

◼ Kennemer's communications regarding Plaintiff's job performance also enjoyed a qualified privilege. Reixach asked Kennemer for his opinion regarding Plaintiff's ability. At this time, Kennemer's firm was auditing the District which specifically required the firm to observe Plaintiff's job performance. When Kennemer opined about Plaintiff's job performance, he shared a common interest with Reixach over the subject matter and had a duty to respond to Reixach's inquiry.

The Court finds that Defendants have met their summary judgment burden of initially showing the Court that their communications were entitled to a qualified privilege. *See*

---

5. There is some question concerning the correct name of the firm who was hired to audit the District and the procedural ramifications in correcting the name of this firm in the pleadings. However, the Court need not consider this issue because of the disposition it makes of this case.

*Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. Thus, to defeat summary judgment, Plaintiff must come forward with specific facts showing that there is a genuine issue of actual malice for trial. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(c)). Proof presented to show actual malice must be convincingly clear to overcome the privileges attached to qualified statements. *Schauer,* 856 S.W.2d at 450.

The Court finds that Plaintiff has failed to meet its burden regarding the statements made by Defendant Kennemer regarding Plaintiff's job performance. Plaintiff has come forth with no evidence to suggest that Kennemer acted with actual malice in opining upon Plaintiff's job performance.

Additionally, the Court finds that Plaintiff has failed to meet its burden to show that there is a genuine issue of actual malice regarding the statement made by Saathoff. Plaintiff alleges that malice is shown because (1) he was not reprimanded under the District's drug and alcohol policy after Saathoff made her statement; (2) Saathoff later became the Director of Finance and Administration for the District after a narrow search for other qualified candidates; and (3) Saathoff admitted that the week prior to her smelling alcohol on Plaintiff's breath, she had a cold and could not smell that *prior* week.

Court concludes that these facts do not present clear and convincing evidence of Saathoff's malice in making the statement about Plaintiff. Plaintiff makes much of the fact that when he was hired, a nationwide search costing $9,000 was made before he was hired, but, Plaintiff was hired only after a narrow search which only met the minimum requirements of the Equal Employment Opportunity Commission. It is entirely possible that the District concluded that a large search would not help in retaining a more qualified employee, especially since they had become unhappy with Plaintiff after spending so much in finding him.

These three facts emphasized by Plaintiff to show malice, when taken alone, merely raise a suspicion about Saathoff's malice. Moreover, when these facts are considered in light of the entire record, the Court finds even the suspicion completely dispelled. Because no genuine issue of material fact exists regarding malice of either Kennemer or Saathoff, Defendants Kennemer's and Kennemer, Vandaveer & Master's motion for summary judgment is GRANTED.[6]

## DEFENDANTS FRED SCHUMM AND MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

The remaining claims against Defendants Fred Schumm and Merrill Lynch, Pierce, Fenner & Smith, Inc. are for tortious interference with contractual relations and conspiracy. Defendants first argue that they are entitled to summary judgment on the former claim because Plaintiff has failed to establish an essential element of his claim.

The elements of tortious interference with contractual relations are (1) the existence of a contract subject to interference; (2) the interference was willful and intentional; (3) the interference was a proximate cause of Plaintiff's loss; and (4) actual loss occurred. *Juliette Fowler Homes v. Welch Assoc.,* 793 S.W.2d 660, 664 (Tex.1990). Defendants contend that Plaintiff has produced no evidence that Schumm actually interfered with Plaintiff's employment contract. The Court agrees.

Plaintiff's complaint contends that Schumm's motivation for interference with Plaintiff's employment began when Plaintiff revoked Schumm's authority to transfer money between brokerage firms. Even if the Court assumes that this act caused Schumm to harbor animosity towards Plaintiff, Plaintiff has still presented no evidence which shows that Schumm actually interfered with Plaintiff's employment contract. The only evidence produced by Plaintiff is evidence that Schumm knew Plaintiff was terminated after the fact and that Schumm re-

---

**6.** In his statement of facts, Plaintiff alleges that Kennemer repeated Saathoff's statements. However, Plaintiff has failed to meet its burden to show that a genuine issue of Kennemer's malice exists for trial which would overcome any qualified privilege surrounding these statements.

sumed business with the District after Plaintiff was terminated. The Court concludes that the entire record, including these facts, could not lead a rational trier of fact to find that Schumm interfered with Plaintiff's employment contract. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Consequently, Defendants' motion for summary judgment on Plaintiff's tortious interference claim is GRANTED.

■ Plaintiff claims that Defendants Schumm and Merrill Lynch conspired with the District to unlawfully terminate him in retaliation for his exercising his First Amendment rights in revoking Schumm's authority. The essential elements of conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Times Herald Printing v. A.H. Belo Corp.,* 820 S.W.2d 206, 216 (Tex.App.—Houston [14th Dist.] 1991, no writ).

■ Defendants' motions for summary judgment on the conspiracy claim must be granted for several reasons. First, Plaintiff has failed to produce any evidence that any of the defendants had a "meeting of the minds" regarding terminating Plaintiff. Specifically, Plaintiff has not produced any evidence, circumstantial or direct, to raise a genuine issue of material fact for trial that Schumm had a meeting of the minds with anyone at the District. Thus, Schumm and Merrill Lynch are entitled to summary judgment on the conspiracy claim.

Moreover, the Court previously held that Plaintiff's speech in revoking Schumm's authority was not protected under the First Amendment. Thus, although the facts indicate otherwise, if Plaintiff was fired for his revocation of Schumm's authority, this termination would not be an unlawful act. Plaintiff has failed to produce any other evidence which would support the claim that Defendants acted to terminate Plaintiff through unlawful means.

Since Schumm and Merrill Lynch are entitled to summary judgment on the conspiracy claim, the District and it individuals named

as defendants in this suit are entitled to summary judgment because, as a matter of law, an entity such as the District cannot conspire with itself. *Wilhite v. H.E. Butt Co.,* 812 S.W.2d 1, 5 (Tex.App.—Corpus Christi 1991, writ denied). Consequently, Defendants' motion for summary judgement on Plaintiff's conspiracy claim is GRANTED.

In conclusion, all Defendants' motions for summary judgment are GRANTED. All claims against Defendants Brazos River Harbor Navigation District, John W. Damon, F.J. Richers, Tobey L. Davenport, Thomas S. Perryman, B.P. Haynes, B.L. Tanner, A.J. Reixach, Ben Backor, Everet Kennemer, Kennemer, Vandaveer, & Master, Merrill Lynch, Pierce, Fenner & Smith, Inc., and Fred Schumm are DISMISSED WITH PREJUDICE.

The Court ORDERS the parties to file nothing further in this Court. Any party who files a motion for reconsideration of any issue of law dismissed in this Order or the Order of April 20, 1993, will be levied *substantial* Rule 11 sanctions for purposely violating this Court's direct Order. *All further relief* concerning these issues must be sought from the United States Court of Appeals for the Fifth Circuit. Each party shall bear the costs it has incurred to date.

IT IS SO ORDERED.