**Aspy N. FATAKIA**

v.

**Mark A. HANNA, et al.**

**Civ. A. No. 88–745.**

United States District Court,
E.D. Louisiana.

July 20, 1989.

---

2. *Id.*

3. *See* LSA–R.S. § 40:1299.42.

4. *See* LSA–R.S. 22:5.

**236**

Jacques F. Bezou, New Orleans, La., for plaintiff.

Earl S. Eichin, Jr., New Orleans, La., for defendants.

## OPINION AND ORDER

BEER, District Judge.

During October 1986, plaintiff Aspy N. Fatakia opened a margin account with defendant L.F. Rothschild & Co., Inc. to trade securities. Over the course of the next year, he traded profitably in high technology and communications stocks recommended by defendant Mark A. Hanna, a Rothschild vice-president.

Mr. Fatakia's luck soon changed. On October 19, 1987 ("Black Monday"), the Dow Jones Industrial Average plummeted, dragging down with it the share value of most issues.[1] Like most investors, Fatakia was hit hard; the value of his Rothschild account declined dramatically, his equity position became inadequate to satisfy maintenance margin requirements,[2] and Rothschild liquidated his portfolio.

Aggrieved by this turn of events, Fatakia sued Mr. Hanna and Rothschild. In his suit, he alleges (1) that the defendants violated federal and state securities laws by misrepresenting material facts in connection with the purchase and sale of the securities in his Rothschild portfolio,[3] (2) that they engaged in a racketeering enterprise in violation of RICO, (3) that their actions constituted unfair trade practices under Louisiana consumer protection law, and (4) that their conduct was tortious. Fatakia also contends that the defendants wrongfully liquidated his account without first giving him a fair opportunity to meet his margin call.[4]

The defendants move for partial summary judgment on two of Fatakia's claims. First, they argue that there is no factual support for a material element of Fatakia's federal securities fraud claim.[5] Namely, Fatakia has produced no evidence that the defendants' material misrepresentations caused his losses; rather, they argue that the Black Monday stock market crash proximately caused those damages. Second, the defendants maintain that since they liquidated Fatakia's portfolio pursuant to the terms of an agreement, no material dispute exists over their right to do so. However, because the plaintiff has not formally pled this hypothetical claim, it is not properly before the court and need not be addressed here.

## I. *Opinion*

### A. Standard for Summary Judgment

1. The court takes judicial notice of the general decline of the stock market on October 19, 1987. The Black Monday market crash is an indisputable fact "generally known within the territorial jurisdiction" of this court. *See* Fed.R.Evid. 201(b)(1).

2. "Maintenance margin" is that amount of equity which an investor must maintain in a security.

3. Specifically, he alleges that Hanna sold him high risk, volatile stocks with misrepresentations like the following: "This stock is the hottest thing and you won't lose"; "we will take you out in two weeks max with a nice profit"; "we are bringing this stock to the market and believe me this goes higher"; "I've just talked to the trader and he's bullish"; and "this company brings out their results next week and the stock moves up—no question about it." *See* Complaint ¶ 12, at 7; Plaintiff's Memorandum in Opposition to Summary Judgment at 2 [hereinafter Plaintiff's Memo].

4. Fatakia's lawyer informally made this contention to opposing counsel. *See* Defendants' Memorandum in Support of Summary Judgment at 4 n. 8 [hereinafter Defendants' Memo].

5. Because neither party has addressed the plaintiff's Louisiana law or RICO claims, the court assumes that this motion presents for summary disposition only those federal securities fraud claims arising under section 10(b) and Rule 10b-5.

Federal Rule of Civil Procedure 56(c)[6] "mandates the entry of summary judgment, after adequate time for discovery[7] and upon motion, against a party who fails to make a showing sufficient to establish the existence of a [material fact] ... which that party [must prove] at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

1. *Materiality.*—The controlling substantive law governs which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the plaintiff's suit under the governing law." *Id.* Other facts are irrelevant to a motion for summary judgment.

2. *Genuineness.*—Summary judgment is appropriate when there exists no "genuine" dispute regarding a dispositive material fact. *Id.* A dispute is "genuine" only if a reasonable jury could return a verdict on that issue for "either party." *Id.* at 2511. When, as here, the movant is the defendant,[8] the movant-defendant initially need only make a " 'showing'—that is, pointing out to the District Court—that there is an *absence of evidence* " to support a material element of the plaintiff's case. *Celotex* 106 S.Ct. at 2554 (emphasis added); *see also id.* at 2557 (Brennan, J., dissenting); *International Assoc. of Machinists & Aerospace Workers, AFL–CIO, Lodge No. 2504 v. Intercontinental Manuf. Co.,* 812 F.2d 219, 222 (5th Cir.1987); *Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 860 (5th Cir.1986). However, a "showing" is more than a conclusory allegation; the defendant must affirmatively demonstrate the absence of evidence in the record. *Id.* 106 S.Ct. at 2553; *id.* at 2557 (Brennan, J., dissenting). But the defendant need not produce affidavits

or other new evidence "negating" the non-movant's claim. *Id.* at 2553.

If the defendant successfully makes such a "showing," the plaintiff must oppose the motion with any of the kinds of evidence listed in Rule 56(c).[9] *Id.* at 2553–54. He need not produce admissible evidence. *Id.* But he must go beyond the pleadings to designate specific disputed facts. He must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the plaintiff fails to do so, the court must grant summary judgment.

B. Standard Applied to Plaintiff's Section 10(b) and Rule 10b–5 Misrepresentation Claim

Summary judgment on plaintiff's misrepresentation claim is appropriate unless a genuine issue of material fact remains. Thus, the court must consider (1) which facts are "material" elements of the plaintiff's 10b–5 misrepresentation action, and (2) whether a "genuine" issue exists regarding any such material element.

1. *Materiality.*—Section 10(b) of the Securities Act of 1934 and Securities and Exchange Commission Rule 10b–5 govern Fatakia's misrepresentation claim. *See* 15 U.S.C. § 78j(b) (codification of § 10(b) of the 1934 Act). To make out a prima facie securities fraud claim under these provisions, Fatakia "must establish (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which [he] relied (5) that proximately caused his injury." *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir.1981); *see also, e.g., Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115 (S.D.N.Y.), *affirmed,* 822 F.2d

6. Fed.R.Civ.P. 56(c) ("[I]f the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.").

7. If it appears that the nonmoving party is being " 'railroaded' by a premature motion for summary judgment," the court should deny the motion, or continue it until the nonmoving party

has adequate opportunity to make full discovery. Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554–55 & 2554 n. 6, 91 L.Ed.2d 265 (1986).

8. Or more properly, when the movant does *not* bear the burden of proof on that issue at trial.

9. *See supra* note 1.

14 (2d Cir.1986); *Bochicchio v. Smith Barney, Harris Upham & Co., Inc.,* 647 F.Supp. 1426 (S.D.N.Y.1986).

While causation is a material element of Fatakia's securities fraud action, it is an element riddled with confusion and jurisprudential inconsistency. *See, e.g., In re Washington Public Power Supply System,* 650 F.Supp. 1346, 1352 (W.D.Wash. 1986) [hereinafter *WPPSS*]. Most courts have bifurcated the causation issue into the subissues of "transaction causation" and "loss causation." *E.g., Hatrock v. Edward D. Jones & Co.,* 750 F.2d 767, 773 (9th Cir.1984); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 979–80 (E.D.N.Y.1988); *WPPSS,* 650 F.Supp. at 1353; *Rankow v. First Chicago Corp.,* 678 F.Supp. 202 (N.D. Ill.1988). Under this bipartite approach, the 10b–5 plaintiff must prove not only that the defendant's misrepresentation caused him initially to enter into the transaction ("transaction causation"), but also that the misrepresentation caused his loss ("loss causation").

Other courts, however, have characterized the two-part causation issue as one of "reliance" and "proximate cause." Under that approach, the 10b–5 plaintiff must first prove that "but for" the misrepresentation, he would not have acted ("reliance"). *Huddleston,* 640 F.2d at 549. Then, the plaintiff must prove that the misrepresented fact was "proximately" responsible for his loss ("proximate cause") *Id.*

While these approaches are nominally different, they are substantively identical. *See Huddleston,* 640 F.2d at 549 n. 24; *In re Fortune Systems Litigation,* 680 F.Supp. 1360, 1365 (N.D.Cal.1987) (interchanging *Huddleston*'s "proximate cause" approach with the more popular "loss causation" approach). Under both, the plaintiff must prove that the defendant's misrepresentation is a proximate reason for the security's decline in value; that is, that the misrepresentation "touches upon" the

devaluation. *Huddleston,* 640 F.2d at 549–50. This is well-illustrated by *Platsis v. E.F. Hutton & Co., Inc.,* 642 F.Supp. 1277, 1299 (W.D.Mich.1986).

In *Platsis,* the plaintiff alleged that an E.F. Hutton broker misrepresented the risks of investing in petroleum securities: "oil and gas is for you," "oil and gas shelters are superior," "you have to rely on us, E.F. Hutton is too big, it wouldn't bring junk [oil and gas securities] into the market." *Id.* at 1289. The court found that "plaintiff's monetary loss was the direct result of *external market conditions* and not the results of any misrepresentations … which may have been made." *Id.* at 1299 (emphasis added). Dismissing the plaintiff's 10b–5 claims, the *Platsis* court held: "plaintiff's claim of causation [was] broken" by an "industry-wide collapse of oil and gas prices due to deregulation of the oil industry and a glut in oil supplies." *Id.* Other courts have reached similar results based on market conditions.[10] *See, e.g., Fryling v. Merrill Lynch, Pierce, Fenner & Smith,* 593 F.2d 736 (6th Cir. 1979) (no causation when "market conditions" rather than fraud are responsible for plaintiff's loss); *Rankow,* 678 F.Supp. at 207 (plaintiff's "loss sustained due to the intervention of market fluctuations" not due to defendant's conduct); *In re Catanella & E.F. Hutton & Co.,* 583 F.Supp. 1388, 1416 (E.D.Pa.1984) (when plaintiff's loss is due to "an independent intervening cause, such as a fluctuation in the stock market, … the chain of causation" is broken).

For these reasons, a material element of Fatakia's 10b–5 claim is proof that the defendants' alleged misrepresentations proximately caused his loss. To win, indeed to get past summary judgment, he must produce such evidence.

■ 2. *Genuineness.*—The defendants' argue that no genuine issue exists regarding the causation element of Fatakia's

---

**10.** The circumstances of the present lawsuit are altogether different from those existing when the defendant's misrepresentation allegedly inflates the sale price of a security. When that is the case, subsequent market fluctuations are irrelevant; the plaintiff's "loss" occurs when the plaintiff pays the artificially high price for the security. *See WPPSS,* 650 F.Supp. at 1352–54; *Bernstein,* 702 F.Supp. at 980.

10b–5 claim. Arguing that no evidence indicates that their "misrepresentations" caused Fatakia's losses, the defendants have put forth proof that the decline in value of the securities in Fatakia's Rothschild account was caused by the Black Monday market crash. Fatakia must therefore go beyond the pleadings to designate specific disputed facts on this issue; he must "do more than simply show that there is some metaphysical doubt" regarding proximate cause. *See Matsushita*, 106 S.Ct. at 1356.

Plaintiff has not met this burden. His attorney merely makes the following conclusory argument: "to say that [Fatakia's losses are] attributable to market forces alone is simply ludicrous. Had Hanna followed Mr. Fatakia's investment objectives,[11] these losses simply would not have occurred...." Plaintiff's Memo at 2. Because he puts forth no evidence to raise a fact issue on the material causation element, partial summary judgment must be granted.

## II. *Order*

Defendants' motion for partial summary judgment on plaintiff's section 10(b) and Rule 10b–5 claims is GRANTED. The defendants are requested to prepare and submit a partial judgment consistent with this minute entry.

---

11. The court declines to address the vaguely-raised issue of whether the stocks recommended by the defendants were "unsuitable" in light of his "investment objectives." The federal circuits remain divided on whether an investor can maintain a private cause of action against a broker under the Know Your Customer Rule, *see* NYSE Rule 405, or under the Suitability Rule, *see* NASD Manual, art. III, § 2. *Compare Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.1966) (no private right of action) *with Buttrey v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135, 142 (7th Cir.1969) (private right of action exists). The Fifth Circuit has declined to enter this "fray." *See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318 (5th Cir.1981). And so does this court; as plaintiff presents it here, the issue need not be considered.