**David SCHMOLDT, a married man, Plaintiff,**

v.

**WADCO INDUSTRIES, INC., a California corporation, and the United States of America, Defendants.**

**No. CIV 93–0185 PHX PGR.**

United States District Court,
D. Arizona,
One Division.

Sept. 30, 1996.

---

**906**

Gregory G. Schultz, Phoenix, AZ, for plaintiff.

Larry Cohen, Dennis Martin Lamber, Michael R. Arkfeld, William H. Doyle, Phoenix, AZ, for defendants.

### OPINION AND ORDER

ROSENBLATT, District Judge.

Presently before the Court is Defendant United States of America's Motion for Summary Judgment alleging that this court lacks subject matter jurisdiction over it due to the bar of 28 U.S.C. § 2680(a), the discretionary function exception of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. The United States also asserts in its motion that Plaintiffs are precluded from recovery because Sundt Corporation ("Sundt") was an independent contractor. Plaintiffs, joined in by defendant WADCO Industries ("WADCO"), have opposed the motion. Having considered the motion papers in light of the entire record and the oral argument of counsel, the court finds that the United States' Motion for Summary Judgment based on Sundt's independent contractor status and an alleged lack of subject matter jurisdiction must be denied.

## I. BACKGROUND

In 1990, Sundt was awarded a contract by the United States, through its agent, the Army Corps of Engineers (collectively "United States"), for the construction of the Arizona Canal Diversionary Channel. In order to comply with its responsibilities under the contract, Sundt and WADCO, in a collaborative effort, designed and constructed a traveling channel form for use in connection with the construction of the canal.

On August 17, 1992, Plaintiff David Schmoldt, an employee of Sundt, was in the process of moving horizontally on the channel form, and to do so, was allegedly forced to disconnect his safety belt from one safety latch and attempt to re-attach it to another safety latch. Schmoldt fell from the channel form during this process. Schmoldt attempted to stop his fall by grabbing a steel cable resulting in injuries to his arm and shoulder. On January 27, 1993, Schmoldt and his wife, Deborah Schmoldt (collectively "Plaintiffs"), initiated this action against WADCO and later amended their Complaint, adding the United States as a second named defendant.

In the Complaint, Plaintiffs allege, *inter alia*, that WADCO designed the channel form defectively, and that the United States had a contractual duty to notify Sundt that the channel form's design was a safety violation, yet failed to warn Sundt or take affirmative steps to correct the safety violation.

## II. DISCUSSION

### A. Standard for Summary Judgment

█ The United States, as the movant asserting a lack of subject matter jurisdiction based on the discretionary function exception, bears the ultimate burden of proving the applicability of the exception. *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995). Under this standard, the United States would be entitled to summary judgment if "it has adduced sufficient evidence to establish that no genuine issues of material fact remain for trial with respect to the discretionary function exception." *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992). For purposes of summary judgment, the evidence is viewed in the light most favorable to the nonmoving parties, and all justifiable inferences are to be drawn in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

### B. Discretionary Function Exception

The FTCA generally waives the United States' sovereign immunity when government employees are negligent within the scope of their employment, and grants subject matter jurisdiction in such cases to the federal district courts. Hence, the government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place the act or omission occurred." 28 U.S.C. § 1346(b).

█ Consistent with this purpose, the FTCA is limited by a number of exceptions including the discretionary function exception, which bars a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The basis for the exception was Congress' desire to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954,

1959, 100 L.Ed.2d 531 (1988), quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984). "The exception covers only acts which are discretionary in nature, acts that 'involve an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). Further, these discretionary acts are only protected when governmental actions and decisions are based on considerations of public policy. *Id.*, at 323, 111 S.Ct. at 1274.

The issue is thus whether the conduct on which Plaintiffs rely for recovery falls within the discretionary function exception. *Camozzi v. Roland/Miller & Hope Consulting Group*, 866 F.2d 287, 288 (9th Cir.1989). The Ninth Circuit, relying on *Berkovitz, supra*, employs a two-step framework to analyze whether an action falls within the discretionary function exception. *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1025 (9th Cir.1989). The *Kennewick* Court stated:

> We must "first consider whether the action is a matter of choice for the acting employee.... [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1958. If the challenged conduct does involve an element of judgment, our second step is to "determine whether that judgment is of the kind that the discretionary function exception was intended to shield." *Id.* [486 U.S. at 537, 108 S.Ct.] at 1959. To be shielded, the judgment must be "'grounded in social, economic, and political policy.'" *Id.*

880 F.2d at 1025. The issues under the discretionary function exception turn on the facts necessary for the United States to "prove that each and every one of the alleged acts of negligence (1) involved an element of judgment and (2) the judgment was grounded in social, economic, or political policy." *Prescott*, 973 F.2d at 703.

### 1. Discretion in Reporting Safety Violations

In the present case, Plaintiffs argue that the United States violated its contractual

duty to notify Sundt of any non-compliance with safety violations specified in the U.S. Army Corps of Engineers' Safety and Health Requirement Manual EM 385–1–1 (hereinafter "EM 385–1–1"). The United States argues that the contract between the parties bestowed all safety responsibility and general liability on the contractor and that the Corps lacked responsibility for the day-to-day operation of the project. The contract between the parties, as mandated by the Federal Acquisition Regulations, 48 C.F.R. Ch. 1, § 52.236–13, requires that "[t]he Contracting Officer shall notify the Contractor of any non compliance" with EM 385–1–1. The mandated language has the force and effect of law. *Routh v. United States*, 941 F.2d 853, 854 (9th Cir.1991). It is Plaintiffs' contention that employees working on the channel form, from which Plaintiff Schmoldt fell, were unable to be continually secured to the form although they were working at a height greater than six feet. Under EM 385–1–1, any employee working over six feet above ground must be continually anchored. Plaintiffs further assert that the channel form violates EM 385–1–1 safety standards, which, under the terms of the contract, obligated the United States to notify Sundt of this safety violation. The United States contests whether a mandatory obligation existed, asserting that any action or omission surrounding this channel form would have been discretionary.

The question is whether the contract requirement of reporting a EM 385–1–1 safety violation creates a non-discretionary duty on the contracting officer to notify the contractor of the inability of employees to be continually anchored on the portion of the channel form at heights above six feet. *See Routh v. United States*, 941 F.2d at 855. In *Routh*, the issue was whether the same contract language requiring the United States to report safety violations to the contractor allows for discretion in notification of safety violations. That court held that "discretion was removed from the contracting officer in notifying the contractor of noncompliance with the safety requirements by the word 'shall'" in the contract. *Id.* The *Routh* court ultimately held, however, that although the duty to notify of safety violations was not discre-

tionary, the failure to oversee actions taken after safety violations were reported was discretionary in that specific case because "safety standards were not incorporated" into the contract. *Id.*

■ In this case, the United States did incorporate safety standards into its contract with Sundt. Specifically, the contract provided that "the contractor shall comply with ... Safety Manual EM 385–1–1," which requires all persons to be continuously anchored by a safety belt at heights above six feet, and that the Corps "shall notify the contractor of any non compliance with" EM 385–1–1. 48 C.F.R. § 52.236–13.

In support of its assertion that any decision regarding the safety of the channel form is discretionary, the United States relies heavily upon *Clark v. United States*, 805 F.Supp. 84 (D.N.H.1992). However, the United States' reliance on *Clark* is misplaced. Although *Clark* is a discretionary function case that deals with almost identical contractual language between a contractor and the Army Corps of Engineers, there is one key factual distinction—in *Clark*, the government did notify the contractor of a safety violation, whereas in the case at bar, the Corps failed to notify the contractor of a safety violation. *Clark*, 805 F.Supp. at 87. The *Clark* court specifically noted that no claim was made as to whether the United States "breached its contractual duties to notify the contractor of these violations." *Id.* Moreover, the *Clark* court recognized that the identical contract language required a specific course of action as to notification, which is not discretionary.

In short, because the Corps retained the responsibility to inform the contractor of safety violations and had a published list of safety violations (EM 385–1–1), the Corps had no discretion with regard to the reporting of such violations. The evidence of record, viewed in a light most favorable to Plaintiffs, is sufficient to establish that the Corps' contracting officer did know of the safety violation at issue and failed to report it to Sundt, the contractor. *See, Phillips v. United States*, 956 F.2d 1071 (11th Cir.1992) (not a discretionary function in failing to perform mandatory safety obligations); *McMichael v.*

*United States,* 856 F.2d 1026 (8th Cir.1988) (no discretion exists in following government's prescribed course of action for safety checks).

### 2. The Omission of Safety Violation Notification as a Policy Choice

Although case law demonstrates a lack of discretion on the part of the United States, assuming *arguendo* that this court were to find that failing to warn of a safety violation was discretionary, the next step is to determine whether that judgment should be shielded by the exception. The exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz,* 486 U.S. at 537, 108 S.Ct. at 1959. In general, safety related government decisions that are not motivated by policy considerations do not fall within the discretionary function. *See Summers v. U.S.,* 905 F.2d 1212, 1215–16 (9th Cir.1990). The Ninth Circuit has determined that a decision not to warn of a specific, known hazard "is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." *Faber,* 56 F.3d at 1127, quoting *Sutton v. Earles,* 26 F.3d 903, 910 (9th Cir.1994). The *Faber* court, relying on 9th Circuit case law and Congressional intent, stated:

"[A] failure to warn involves considerations of safety, not public policy. It would be wrong to apply the discretionary function exception in a case where [the government] made a judgment not to post a warning sign, or to erect a guard rail, or to make a safer path. . . . To interpret such a judgment as discretionary would be too expansive an interpretation of Congress' intent in creating the discretionary function exception.

56 F.3d at 1125. Similarly, in *Routh,* the court held that "the contracting officer's decision whether or not a given situation created a safety hazard in violation of the safety provisions of the contract was not a public policy decision." 941 F.2d at 856.

■ The United States again relies on *Clark, supra,* in an attempt to demonstrate its policy decision. However, the *Clark* opinion does not explicitly or implicitly hold that a failure to notify is a policy choice that the

discretionary function exclusion was meant to shield. The facts at bar are that the United States allegedly failed to warn or notify Sundt of a safety violation. Plaintiffs' response to this argument correctly asserts that the United States' judgment in not notifying Sundt of specific safety violations is not a policy decision protected by the discretionary function exclusion. *Camozzi v. Roland/Miller & Hope Consulting Group,* 866 F.2d at 292.

### 3. Discretion in Correcting Safety Violations

■ Plaintiffs also assert in their Complaint that the United States failed to take affirmative steps to correct a safety violation. Under this cause of action, it too must be determined whether the United States' failure to take steps to correct safety violations involves discretion. Looking at the actual contract language, there is no evidence of an obligation on the part of United States to take affirmative steps to correct safety violations. In fact, under the contract, overall safety responsibility was under Sundt's control. Ninth Circuit case law dictates that there must be a "specific and mandatory" regulation, statute, governmental directive or policy, or contract to remove discretion of a act or omission under the discretionary function exception. *See Kennewick,* 880 F.2d at 1026; *Routh,* 941 F.2d at 855. Therefore, in the absence of evidence to the contrary, it appears that any decision to not take affirmative steps in correcting safety violations was discretionary.

### 4. The Failure to Correct a Safety Violation as a Policy Choice

■ Even if an act or omission is discretionary, it must be based on social, economic and political policy. *Faber,* 56 F.3d at 1125. United States again relies primarily on *Clark, supra,* in an attempt to meet its burden of proving that this decision was grounded in policy. In *Clark,* wherein the plaintiff claimed that United States had a duty to stop production in order to correct a safety violation, the court held that the decision to continue with work production was not only discretionary, but a policy decision weighing the benefits of safety and the constraints of

time and economics, which was protected by discretionary function exception. 805 F.Supp. at 90. The United States' reliance on *Clark* is unpersuasive, however, since the Ninth Circuit takes a different view with respect to whether economics versus safety is a viable policy decision. The Ninth Circuit's view is that "[t]he government's position, carried to its logical extreme, would allow the undercutting of a policy decision to require a safe workplace by purely economic considerations," which is not a policy decision of the kind protected by the discretionary function exclusion. *Routh*, 941 F.2d at 856. The *Routh* Court also mentioned that because the 48 C.F.R. § 52.236–13 contract is a fix priced contract, which is the same contract at issue here, any "[i]mplementation of safety measures required for the protection of the employees would have been a cost to the contractor, but not demonstrably to the United States." *Id.* Thus, an act or omission in correcting safety violations is not protected under the discretionary function exclusion.

C. *Sundt's Independent Contractor Status*

■ Alternatively, the United States, citing to *Levrie v. Dep't of Army*, 810 F.2d 1311 (5th Cir.1987), *Pershing v. United States*, 736 F.Supp. 132 (W.D.Tex.1990), and *Martinez v. United States*, 661 F.Supp. 762 (W.D.Tex. 1987), moves for summary judgment based on the assertion that the government cannot be liable for the negligent acts of an independent contractor. While it is correct that the FTCA does not waive the United States' sovereign immunity for torts of government contractors, 28 U.S.C. § 2671, the defense is inapplicable to this action since Plaintiffs do not assert that Sundt acted negligently, rather they assert that the United States was directly negligent. The specific claim is that the contracting officer, a Corps employee, failed to notify Sundt of a safety violation, and in doing so, acted negligently.

IT IS THEREFORE ORDERED that Defendant United States' Motion for Summary Judgment (doc. # 36) is DENIED.